Rhode Island Joint Reinsurance　　　:
　　　Association

　　　　　　v.　　　　　　　　:

Manuel Rosario et al.　　　　　:

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Rhode Island Joint Reinsurance　　　：
　　　　　Association

　　　　　　　v.　　　　　　　　：

Manuel Rosario et al.　　　　　：

Present:　Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.**　This appeal arose from an interpleader action filed by the plaintiff, Rhode Island Joint Reinsurance Association (RIJRA), against multiple defendants to determine the proper disposition of insurance proceeds.[1]　The defendants, Manuel Rosario (Rosario) and Reyna Bernard (Bernard), appeal from a judgment of the Superior Court in favor of Ocwen Loan Servicing, LLC (Ocwen) as agent for HSBC Bank, USA, N.A. (HSBC), granting Ocwen's motion for summary judgment with regard to the interpleader claim as well as all other claims asserted by the defendants in this action.[2]　After considering the record below and the memoranda submitted by the parties, and for the reasons set forth herein, we affirm the judgment of the Superior Court.

---

[1] The interpleader defendants were: Manuel Rosario, Reyna Bernard, Alias, McCauley & L'Europa, LLC, and Ocwen Loan Servicing, LLC as agent for HSBC Bank, USA, N.A.
[2] The record reflects that Rosario and Bernard were the only defendants who filed a notice of appeal in this action.　Accordingly, this Court will not consider the prebrief filed by McCauley & L'Europa.

# I

## Facts and Travel

The pertinent facts are as follows. On March 16, 2006, Bernard purchased property at 265 Union Avenue in Providence. On the same day, Bernard executed a promissory note to Delta Funding Corporation d/b/a Fidelity Mortgage (Fidelity Mortgage) in the principal amount of $236,000 that was secured by a mortgage on the property.[3] The mortgage identified Bernard as the borrower and mortgagor, Fidelity Mortgage as the lender, and Mortgage Electronic Registration Systems, Inc. (MERS) as the mortgagee and nominee for the lender. The note was endorsed to HSBC by an undated allonge and, on July 21, 2008, MERS, acting in its capacity as nominee of the lender, assigned the mortgage to HSBC.

On February 17, 2009, a fire destroyed the property, and it was determined that repair was not feasible. The following day, Rosario entered into an insurance adjusting agreement with McCauley & L'Europa, LLC (McCauley & L'Europa). The agreement provided that McCauley & L'Europa would assist with the adjustment of the loss in return for a fee of 8 percent of the total recoverable loss.

Bernard subsequently defaulted on payments due under the note and foreclosure proceedings were initiated. On July 28, 2009, the property was sold at a foreclosure sale at which HSBC was the high bidder with a bid of $81,375. Thereafter, on September 10, 2009, HSBC executed a quitclaim deed to a third party, Brian Justiniano, for the sum of $31,000. As of January 2011, there was an unpaid deficiency on the note in the amount of $246,072.80.

---

[3] According to Ocwen, Bernard claims to have transferred her interest in the property to Rosario and contends that both she and Rosario were residing at the premises prior to the fire. Ocwen describes the parties' interests in the property as "convoluted," but it insists that the purported transfer does not affect Ocwen's rights to the insurance proceeds.

On June 18, 2009, RIJRA issued a check payable to Rosario, Bernard, McCauley & L'Europa, and Ocwen in the amount of $232,232, in payment for the insurable loss under the policy. According to RIJRA, this check was not endorsed and Rosario and Bernard have "demanded a new check without the name of a mortgagee thereon." On April 16, 2010, RIJRA initiated an interpleader action in the Superior Court to determine the respective rights of Ocwen, McCauley & L'Europa, Rosario, and Bernard with regard to the insurance proceeds. On December 14, 2010, RIJRA's motion to deposit $232,232 into the Registry of the Superior Court was granted and RIJRA was discharged from any further liability arising from the insurance policy it had issued.

Rosario and Bernard answered RIJRA's interpleader action, and they also filed a cross-claim against Ocwen, seeking declaratory relief and to quiet title to the property.[4] Specifically, Rosario and Bernard asked the court to declare that they were entitled to the entirety of the insurance proceeds from RIJRA. Further, Rosario and Bernard sought declarations that: (1) Ocwen and HSBC were strangers to the title of the property; (2) the assignment of the mortgage was void; (3) the foreclosure sale was invalid; and (4) they owned the property as a matter of law.

On July 6, 2010, Ocwen, as agent for HSBC, answered the cross-claims of Rosario and Bernard. Ocwen also filed an answer to RIJRA's interpleader complaint, wherein Ocwen alleged that it was entitled to the entire balance of the insurance proceeds. On September 1, 2010, McCauley & L'Europa answered the interpleader complaint and alleged that, pursuant to

---

[4] The record also reflects that Bernard filed a separate answer and cross-claim in response to the interpleader action, wherein she admitted that she was in arrears of her mortgage; however, Bernard did not pursue her individual claim or allegations in the Superior Court. As such, we shall limit our review to those issues raised by the joint filings of Rosario and Bernard, and we will not address the answer and cross-claim filed by Bernard individually.

the agreement it entered with Rosario, it was entitled to recover 8 percent of the insurance proceeds in payment for its adjustment services.

On June 30, 2011, Ocwen filed a motion for summary judgment on RIJRA's interpleader claim and against the cross-claims of Rosario and Bernard. Ocwen argued that, pursuant to the clear and unambiguous terms of the mortgage deed, Bernard had agreed that any insurance proceeds would be distributed to the lender and its successors and assigns—in this case, HSBC.[5] Therefore, Ocwen averred, that the insurance proceeds should be distributed to it on behalf of HSBC. In support, Ocwen submitted a declaration of Nichelle Jones, a loan analyst at Ocwen, detailing the history and travel of the note and mortgage.

Rosario and Bernard objected to Ocwen's motion for summary judgment, raising several arguments regarding the travel of the note and mortgage. Specifically, Rosario and Bernard argued that: (1) Ocwen had no interest in the insurance proceeds because it is not the lender, mortgagee, or holder of the note; (2) Ocwen had no standing to assert any rights in the insurance proceeds; (3) there was no proof of the validity of the allonge; (4) the foreclosure sale was invalid; and (5) no proof existed that Ocwen or HSBC ever held the note or had the right to

---

[5] Section 5 of the mortgage, signed by Bernard, provides in pertinent part as follows:

> "In either event, or if Lender acquires the Property under [the statutory power of sale] or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due."

Further, Section 5 states that "[f]ees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower."

enforce the note. In support, they submitted an affidavit of Alberta Nota contesting the validity of the signatures that appear on the assignment of the mortgage.

After a hearing, a justice of the Superior Court found that Ocwen was entitled to the entirety of the insurance proceeds pursuant to the language contained in the mortgage. Rosario and Bernard timely appealed.

## II

## Standard of Review

"This Court reviews de novo a trial justice's decision granting summary judgment." Sola v. Leighton, 45 A.3d 502, 506 (R.I. 2012) (quoting Lynch v. Spirit Rent-A-Car, Inc., 965 A.2d 417, 424 (R.I. 2009)). "Summary judgment is appropriate only when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law.'" Id. (quoting Plunkett v. State, 869 A.2d 1185, 1187 (R.I. 2005)). "Only when a review of the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's grant of summary judgment." Id. (quoting National Refrigeration, Inc. v. Standen Contracting Co., 942 A.2d 968, 971 (R.I. 2008)).

## III

## Analysis

On appeal, Rosario and Bernard advance a number of arguments attempting to demonstrate that they are entitled to the insurance proceeds. Most notably, for our purposes, defendants contend that the mortgage executed by Bernard was void because it was not duly

acknowledged as required by G.L. 1956 § 34-11-1.[6]  It is significant that this Court has very recently addressed the issue of the proper disposition of insurance proceeds resulting from a dwelling fire in Rhode Island Joint Reinsurance Association v. Santana-Sosa, 92 A.3d 192, 194-95 (R.I. 2014).  In Santana-Sosa, a borrower executed a mortgage that specified that "any insurance proceeds would be distributed to the lender and its successors and assigns."  Id. at 194, 196.  Thereafter, a fire occurred at the property and the borrower defaulted on payments under the note and mortgage, culminating in the sale of the property at foreclosure.  Id. at 195.

An interpleader action was initiated by the plaintiff-insurer in order to litigate the parties' respective rights with regard to the insurance proceeds.  Santana-Sosa, 92 A.3d at 195.  The loan servicer moved for summary judgment and argued that, pursuant to the mortgage documents, the borrower agreed that "any insurance proceeds would be distributed to the lender and its successors and assigns."  Id. at 196.  The borrower objected and asserted that the mortgage at issue was void and that the foreclosure sale was invalid.  Id.  A justice of the Superior Court granted the motion for summary judgment and the borrower appealed to this Court.  Id.

On appeal, this Court held that "no conceivable resolution of this dispute would result in * * * the borrower[], having a legitimate claim to the funds."  Santana-Sosa, 92 A.3d at 197.  We explained that the borrower failed to "explain how an invalid foreclosure would entitle her to receive the insurance proceeds at issue in this interpleader action."  Id.

Both the facts and the arguments raised in this case are strikingly similar to those presented in Santana-Sosa.  Bernard's mortgage similarly directed that, when repair to the premises was not economically feasible, the insurance proceeds were to be distributed to the

---

[6] General Laws 1956 § 34-11-1 provides in pertinent part that "[e]very conveyance of lands * * * by way of mortgage * * * shall be void unless made in writing duly signed, acknowledged as hereinafter provided, delivered, and recorded in the records of land evidence in the town or city where the lands * * * are situated * * * ."

lender and its successors and assigns. Further, the mortgage provided that public insurance adjusters "shall not be paid out of the insurance proceeds and shall be the sole obligation of [Bernard]." Accordingly, as was the case in Santana-Sosa, defendants have failed to demonstrate any scenario that would lead to their entitlement to the insurance proceeds.

Further, we discern no merit in defendants' contention that the mortgage executed by Bernard was void because it was not duly acknowledged as required by § 34-11-1. Black's Law Dictionary defines "acknowledgment" as "a formal declaration made in the presence of an authorized officer, such as a notary public, by someone who signs a document and confirms that the signature is authentic." Black's Law Dictionary 27 (10th ed. 2014). A review of the record reveals that Bernard signed the last page of the mortgage, acknowledging that she "accepts and agrees to the terms and covenants contained in this [mortgage]." The signature of a notary public appears below Bernard's, and the notary's name is typed immediately beneath her signature. Accordingly, it is our opinion that the mortgage was duly signed and acknowledged in accordance with § 34-11-1.

Finally, the defendants contend that the documents attached to the Jones declaration were inadmissible, the assignments of the note and mortgage are void, and the foreclosure was invalid because Ocwen failed to establish that it was an agent for the noteholder or mortgagee. However, because we have previously explained that, in our opinion, "no conceivable resolution of this dispute would result in * * * [the defendants] having a legitimate claim to the funds," there is no need to address these arguments. Santana-Sosa, 92 A.3d at 197.

## IV

## Conclusion

For the reasons set forth in this opinion, the judgment of the Superior Court is affirmed and the record may be remanded thereto.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**  Rhode Island Joint Reinsurance Association v. Manuel Rosario et al.

**CASE NO:**  No. 2013-159-Appeal.
(PC 10-2270)

**COURT:**  Supreme Court

**DATE OPINION FILED:**  June 4, 2015

**JUSTICES:**  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**  Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**  Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Luis M. Matos

**ATTORNEYS ON APPEAL:**

For Plaintiff:  James P. Marusak, Esq.

For Defendants:  George E. Babcock, Esq.